Good morning, and may it please the Court, I'm James Laughlin, and I represent the appellant Terrance Tucker. With the Court's permission, Mr. Rome, who represents Sonia Tucker and I, would like to split our time down the middle, with each of us speaking for six minutes and reserving three minutes of our time for rebuttal. Okay, and keep your eye on the clock. It counts down. I will do that. Thank you. Judge Real never made a valid factual finding on losses required by federal rule of criminal procedure 32. After he had already imposed Mr. Tucker's sentence, the government got him to engage in what this Court has called the regrettable practice of adopting wholesale government-drafted findings. Generally, the Court stills reviews such findings for clear error, although it does so with special scrutiny. But that's when the government-induced findings really flush out a validly made finding that the judge made at the appropriate time. This case presents a unique situation, because the record reflects that Judge Real didn't actually resolve the dispute over loss before he sentenced Mr. Tucker. In other words, the government's efforts to bolster the record after Mr. Tucker was already sentenced purportedly created a finding that had not yet been made, rather than clarified one that had. First, despite the clear requirement that the guidelines are the starting point in the initial benchmark  Judge Real didn't state his guidelines and calculations at all before he imposed a sentence on Mr. Tucker. This is particularly significant because there was a dispute over loss with the Tuckers arguing for less than a million dollars and the government arguing for more than a million dollars. The application of two levels and a two-year difference in the low end of the applicable range hinged on who was right. But even when the government asked Judge Real to adopt its sentencing position wholesale after it had already sentenced Mr. Tucker, what Judge Real actually said reflects that he didn't understand there was a dispute for him to resolve. He said that there were 20 levels of specific offense characteristics, quote, as agreed by the parties. But there weren't. Because of the two-level dispute over loss, the Tuckers had taken the position that only 18 levels of specific offense characteristics could be applied. And if Judge Real didn't even appreciate that there was a loss dispute, then he clearly didn't resolve the dispute as required by Rule 32. Under these circumstances, the court should hold that Judge Real did not make a valid factual finding as to loss despite everything the government did afterwards to create that impression. As pointed out in Mr. Tucker's reply brief, the government didn't acknowledge, let alone respond to, his Rule 32 argument in its brief. It does not and cannot dispute that if Judge Real did not make a valid loss finding and did not make the required resolution of the dispute over loss, then that's a plain Rule 32 violation that requires resentencing. But even if the court decides to review the government-drafted rubber-stand findings for clear error, a resentencing is still required. Again, the court must review any such finding with special scrutiny after careful inspection of the record. As the record reflects, the government's evidence on loss was unusually sloppy in many ways. For purposes of whether the total loss was over or under $1 million, one aspect of that sloppiness is key. The million-dollar threshold could be crossed only if there was at least $40,000 in loss to the banks, actual loss to the banks. The probation office, using a chart prepared by the government, estimated the bank's losses at about $1.9 million, but noted that the government had not broken down its figures to distinguish between principal on the one hand and interest and fees on the other. But even so, wasn't the court entitled to credit that spreadsheet despite the supposed discrepancies that the court thought that the discrepancies that were mentioned did not sufficiently discredit the spreadsheet? Why couldn't it rely on the spreadsheet then? Well, Your Honor, with regard to the specific issue, the spreadsheet said that the bank losses included both principal, interest, and fees. The application note to 1B1.1 says you can't consider interest and fees in calculating loss. So if the record reflects that Judge Reel says I'm going to rely on this figure, which includes things that this application note says that I can't consider, that's procedural error in the requirements. Was there anything in the record that indicated even if one considered interest and fees? I thought they said that fees were part of the loss amount because those were commissions that were earned. That's a separate category. The probation office broke things down into four categories. The first one was loss to the hard money lenders. The second one was the purported actual loss to the banks. And the third and fourth were figures based on commissions earned, purportedly earned by the tuckers, which were used when actual losses could not be. And what would fees be? Fees? The fees we're talking about now are the fees that are included in the actual bank losses. Like overdraft fees or what kind of fees are you talking about? I'm not sure whether that's even reflected on the chart. As I've said, you know, as this Court knows, you know, typically when we see fraud cases, they're worked up by the FBI, and then they ‑‑ I wish they didn't do such a good job at putting their numbers together. Here we don't have that. The numbers are all over the place, and it's not clarified on the government's chart what's what, and they certainly don't break things down or identify the specificity of fees. But what is clear is that it certainly includes interest, and there's no dispute that under the relevant application note 3 of 3B1.1 that interest cannot be included in bank figures. If the interest were backed out, is it your representation that there would have been a loss of less than $1 million if the interest were not included? I'm saying that on this record we don't know because it's the government's burden. The government complains that we're arguing over technicality. What we're arguing about is the government's burden to prove sentencing factors by preponderance of the evidence of sentencing, which it should take very, very seriously because, as I said, this dispute right here results in two years per defendant of additional incarceration. And what we have here is a series of sentencing papers where Mr. Tucker's first sentencing paper noted this problem. Hey, you come up with this figure, but interest can't be included citing the application note, so that doesn't count. You should fix that. It doesn't do it. The second sentencing paper notes it again. This number doesn't break down between interest and principle. You should do that. It doesn't do it. It was only then that it adopted its final sentencing, and I think valid sentencing position, well, you know what? Since you haven't done that, you can't count any of it because you can't just guess at what is principle and what isn't. No, no, that's a valid sentencing position that you can't count any of it. Well, I think under this circumstance it is, Your Honor. And, again, I think this is a place where because this court – it's sometimes hard to understand what the cases mean when they say when you have government-drafted findings you still review for clear error, but you do so with special scrutiny. This, I think, is the case where that makes a difference because you have to look closer than you would ordinarily look, and what we have here in the record, despite the government giving – The thrust of Judge Rawlinson's question is the same question I have, and that is if we hold the government's feet to the fire and, in a sense, also the district court's feet to the fire, is there any realistic chance we're going to get below a million dollars? Well, first of all, as I pointed out in my reply brief, there's cases from this court and other courts that say when the government has the opportunity to prove up a sentencing factor and then fails to do so, and this court finds on appeal that the evidence was insufficient, it doesn't get a second bite of the apple, and the court sends it back with instructions that they can't present new evidence. But there are also other cases that send it back on an open record, which is probably more likely. Okay. Obviously – Hence the question. Right. In that case, I actually don't know. I don't know what the answer to that is because, as we know, banks have been doing a lot of things in the last several years. They've been merging, you hear about them missing records. I don't know whether they have the records to actually back this up. Okay.  And your contention is, well, we'd better find out and then we'll deal with it. I think that the talkers are entitled to have that opportunity of a sentencing hearing where that very important issue is carefully examined by the district judge and there is a clear and logical finding that then if the wrong is, this court can review knowing exactly what the district judge said. Okay. We've got your position. We've taken you a little over the time you intended to use. Let's hear from your co-counsel, and we'll make sure you get a sufficient chance to respond to the other side. Good morning. Richard Rome for Sonia Tucker. I agree with all that. I have one separate point I would like to make with respect to the sentencing of Mrs. Tucker, and that is this. The court never addressed one issue that she brought up with respect to a variety of things that could have reduced her sentence. Aside from the loss issue, she had raised the issue of sophisticated means, the number of victims, whether they were vulnerable victims, the issue of abuse of trust, the downward departure. All of these issues were raised both in sentencing papers and at the sentencing hearing, and the judge did not address them at all. Once the arguments were made? Well, it was before him. He heard all of your arguments. He heard all of the evidence that was placed there and took into account the vulnerability of the victims, the length of the scheme, all of these things. How far does a sentencing judge at the district level have to go? I mean, are we talking about going for weeks of taking evidence on specific points, particularly in this kind of a case where we're talking about a huge amount of money and many vulnerable victims? Where's the line? That's a good question. I think he at least has to give them a couple of minutes of time. When a district court judge sentences within the guidelines range, has considered all of the papers that have been submitted, has listened to the arguments of counsel, what says that the district court judge has to tick off every single factor and discuss them? There's nothing that says that. There's no case that says that. 3553 requires some statement of reasons. 3553C says that a statement of reasons is required. CARDI, for example, court must explain the sentence sufficiently to permit meaningful appellate review. So, I mean, I guess if the judge doesn't have to address anything, and I'm sure not suggesting that he needs to take evidence or whatever length, doesn't have to be lengthy, I'm just suggesting that if we're going to have a sentencing hearing, at the very least, he should be required to make some record so that when we're here, we can argue why he... He did make some record. And our prior case of Amazakoa Vasquez says that when the sentence is within the guideline range, the district court does not have to elaborate on its reason for a sentence. A short explanation is sufficient. Well, I think his short explanation was so short that it's difficult for me to really address it. And so I think one of the keys is that if we're going to be able to come before this court and be able to argue those specific points, that we need to know the rationale that the judge was giving when he... All he did was jump right into the sentencing. The arguments were given... I don't have cases say if the judge listens to the arguments that are made and then imposes a sentence that doesn't accept the arguments, the judge has implicitly rejected those arguments, particularly when it's a within-guideline sentence. Well, you know, there might be cases that say that. I think there's cases also that require at least some explanation for the appellate review. Otherwise, we're basically left with the paperwork. I see we're down to two minutes, and I think that includes our rebuttal. So maybe we can hold that. That's the one issue that I at least wanted to... Okay. Yeah, you put the issue clearly in front of us. Why don't we hear from the government, and then we'll give both of you a chance to respond as you need it. Okay, thank you. Good morning. May it please the Court, Mark Yohalem on behalf of the United States. I want to start with the second set of arguments raised by Defendant Sonia Tucker. As Judge Rawlinson repeatedly indicated, Cardi and several subsequent cases make clear that where there's an in-guideline sentence, there is no need for the district court to rattle things off. That is particularly true... But the judge can't say, because I said so. That is to say, the judge needs to give at least some short explanation. That is true, and certainly if an objection follows the judge's failure to give any explanation or the judge's just saying, I said so, then I think there would be a good claim of error. Where there is no objection following the purported failure to explain, then we're under plain error, and Valencia-Berrigan makes that clear. And when you're under plain error, Valencia-Berrigan pretty clearly sets forth the standard, which is that the district court simply needs to say that it reviewed the 3553A factors and then needs to impose an in-guideline sentence. I have to say on this point, I think we're talking form rather than substance, meaning if we were to remand on this point to this judge and say, would you please explain, if we get an explanation, we'll nonetheless get precisely the same sentence. And as part of plain error review, the third prong of that is defendants' burden to show a reasonable probability that if there were more of an explanation, there would be a different sentence. Now, I understand, based on the way Your Honor posed that question, that there is some skepticism about this particular court, district court. No. No. I can't presume that. I apologize. That was a generic question. Well, I would say that here. Maybe you have some skepticism. If you're trying to project onto us. The government has high respect for all the district court judges. As you should. That said, what is notably absent from Ms. Tucker's brief, either her reply brief or her opening brief, is any explanation why she should have prevailed on any of these arguments. You know, I'd prefer, I mean, I understand that you'd prefer to spend all of your time on the other side's weakest point. Why don't we move to their stronger point, which is to say, well, these loss calculations really aren't very careful. Well, let me, that was where I was turning to. Before you answer that, were you trial counsel? No, I was not. Okay. Judge Real did not specifically make a finding as to the amount of loss exceeding a million bucks, did he? Yes, he did, Your Honor. Okay. He made that in the proposed findings that he adopted. Are you saying a precise figure of what the number was? At the sentencing hearing. Yes. At the sentencing hearing, he did, after prompting by government counsel to make a statement of what he was finding the loss amount to be, he did say it was over a million dollars. That said, I think if you look at the context in which he announced the sentence, the government had just made an argument that you could get above a million dollars simply by taking numbers that the defendant wasn't really disputing, taking the hard money lenders, that was the individual churchgoers, and adding that to the bank commissions. When you added those together, you got over a million dollars. That produced a guideline. The bank commissions. Yes. What were the bank commissions? The bank commissions were the payments that the banks made to the Tuckers for the Tuckers originating the loans. So the Tuckers had three separate kinds of frauds going on. One was in ways they were getting money. One of the ways they were getting money was the banks would pay them commissions for acting as a mortgage broker. So that is both a direct fraud loss to the bank, because the bank is paying them for a loan that's fraudulent, but it's also a way of approximating the loss to the bank. Now, where was that reflected on the spreadsheet? Did the spreadsheet have the commissions totaled up, the hard money losses totaled up, so that you could disregard the interest and the fees? Could you point us to that in the record? Yes, Your Honor. The spreadsheet, so there are two different spreadsheets here. There's the Government's Exhibit 6, which is at SER 154 to 56, and then there is Defendant's Exhibit L, which is the final spreadsheet that the defendant prepared and gave to the court just before argument. And what's that? Where is that in the record? That's SER 411 to 16. So now, is it your argument that you're going to look at both these spreadsheets to kind of support the million-dollar loss? Yes, let me explain how that works. And I realize, you know, we've become lawyers, so we don't have to be accountants, so these numbers are a pain to calculate. But if you look at Exhibit L, Exhibit L has a series of commissions listed on it. Those commissions total up to only $223,000 and change. The number at issue here is $262,000. If you add that to the individual victims, you get $10 million. When you said that, you had two different numbers. What's your antecedent? The additional number is $1 million, from which you deduct the churchgoer hard money lender loss, which defendant concedes is $737,210. That yields $262,790 as the balance. Defendant says you can't get there by adding the commissions because defendant calculates the commissions to be only $223,000. In fact, however, the commissions were well in excess of $262,000. And if you compare Exhibit 6 and Exhibit L, you'll see that Exhibit L inexplicably omits four commissions. You know, this sounds like really interesting work that should have been done in the district court. Well, Your Honor, with respect, I think it was done in the district court. And let me also note that until the day of sentencing, defendants had taken the position that there was over $1 million in loss. The morning of sentencing, just before argument, they hand the government a new sentencing position where for the first time they are saying that no bank loss can be considered. In their prior sentencing position, they had said that the bank loss could be considered with a 5% discount rate. When you do that, there is undoubtedly way over $1 million in loss. There's about $1,500,000. The day of argument, after they've already obtained an extension, they change their position. They finally ran the numbers. What? They finally ran the numbers and realized they were still over $1 million. No. They had conceded they were over $1 million in their earlier positions. So there's this hearing. At the hearing, the government says, look, even if you take what they are basically conceding can be used, which are the hard victim, the individual victims, and the commissions. Now, it's true the defendant had said don't use the commissions. But as Judge Real rightly held, the commissions are lost to the banks. They're clearly accountable loss. If you looked at the commissions and added those to the individual victims, government counsel explained you got over $1 million. That is correct. Yes, and may I ask you, do you concede that if we look simply at SCR 154 through 56, the spreadsheets, that there is not enough depicted there to add up to $1 million? No. Okay. 154 to 156 lists individual victim losses and also lists these bank losses. And you can go through and look at just the commissions. And I apologize, it is very difficult to read. It is, because I don't see where it says commissions. All right. Let me, if I can have just one moment, I'll just walk through line by line. Starting on page 154. Right. If you look at the very first entry, where it says downy bank, on the second to farthest right column there's a number 22035. Right. To the right of that it says the loss is determined by combining yield spread premium, that's a kind of commission, and real estate commission, paid to Tucker Real Estate. That's the first entry. That shows up on both defendant's spreadsheet and the government's spreadsheet. If you then go down to the line. How about you go down to victim J.C. Wah move where it talks about loss based on lender's calculation of unpaid principal and accrued and unpaid interest. Yes. So what you do there, Your Honor, is it lists the balance of foreclosure minus fair market value. The balance of foreclosure is 600,491 minus fair market value, which is 444. I don't, wait a minute, I don't see where you're getting that 600,000 number. It's TRE plus balance at foreclosure, perens. What column is that? It's the far right column notes. Yeah, right, but it doesn't say all of that. You're looking at J.C. Wah move count 14? Count 14, right. Oh, no, no. I wasn't looking at that. I'm looking at the one under it that talks about interest. That is not a number that I'm including when I say you get to 355,000. If you just add up the commissions, you get up to 355,000. And 355,000 plus the 735,000 they concede is over a million dollars. Let me just ask you this. If we go through this spreadsheet and we eliminate any reference to interest and we add up the figures that don't have a reference to interest, will the sum total more than a million dollars? If you add up just the commissions, the commissions will total up to 355,000. Okay. If you add to that the conceded loss to the individual victims, which is 737,000, you get about $1.1 million. So that's sort of the easiest way to do this, where I don't see how there could be any controversy, is just to add those two numbers. Where is the conceded loss to the victims? That's at SER 410. It's also in the defendant's opening brief throughout it. The second way that you get there is that Zalt, this Court's decision in Zalt, which we said in our briefs, is that the Court's obligation is to make a reasonable estimate. The government's burden is to show a reasonable estimate of losses. When it's on appeal, the question now is whether it was clear error for the district court to use a million dollars as a reasonable estimate of losses in this case. In other words, again, the disputed amount here is $260,000. Was it illogical or implausible for the district court to conclude that there was at least $260,000 in losses to banks, where there were $32 million of fraudulently induced loans written? But that has to be linked to something. Look, the Court just can't pick a number out of thin air and say, well, it must be because it's this number of banks. We haven't done that. That's true, and I wouldn't suggest that it could pick a number out of thin air. However, defendants in their second sentencing position said that 5% would be a reasonable write-off rate for fees and interest. If you took a 5% write-off rate from what the defendants conceded were the bank losses, even there you get a second $750,000. You add that $750,000 to the $730,000 they conceded to victims, and again you get to about a million and a half. It's because of these concessions in their earlier papers that at the time of sentencing the government was not prepared to present a new spreadsheet to respond to their new 11th-hour arguments. What the government did do is, throughout the sentencing process, urge the district court to make a better record. What defendants did not do is ever make such an objection to the district court. They never said, Your Honor, I don't think you've explained things well enough. Your Honor, we'd like you to make a more specific finding. Your Honor, I don't think you've addressed what I said about victims. Anything like that. They made a decision not to do that even as the government was trying to do so. And so now they come here on plain error review, and they have several additional burdens on plain error review. Among them is at prong three, their burden to show that there actually is a reasonable probability there will be a different result on remand. And I submit that on this record, the idea that if it went back, it would not be possible to show $260,000 in losses to the banks is really quite implausible. As to defendants' argument that the government has waived this Rule 32 error, I would first say that the government, although we didn't cite Rule 32, responds to this argument from pages 37 to 40 of our brief, where it talks about defendants' argument that there wasn't a precise enough finding from the district court. I realize it doesn't directly address this timing issue, but Rule 32 error, like a failure to engage in proper sentencing procedures otherwise, is reviewed for plain error where there's no objection. The defendant concedes there was no objection. And so, again, they found her at prong three. I don't see how they can show that the loss amount would have been different if Judge Reel had made his finding prior to sentencing than if he had made it immediately after. Furthermore ---- Counsel, I have a little problem with your argument. Because I'm looking at S.E.R. 411 through, I think you said 14, through 16. Yeah. And that includes some of the same accounts that were in 154 and 56. So you're ---- I mean, if you ---- if that $737,000 includes the $300,000 that you're talking about, why ---- It does not, Your Honor. Why not? In that table, they show the figures for the commissions, for some of the commissions, in Column 3. Column 3 on their table is what they call the government figure. They, however, argued at that stage in that table that the commissions should not be counted. So their total number, which appears on page 410 of the sealed excerpt, is 737. That includes no commissions. Now, they do list some commissions on this table. As I said before, they're inexplicably missing four of the commissions. One is this $221,000 commission on S.E.R. 154. That was count 14 of the indictment. They miss a $35,000 commission on Courtney Court. That was count 11 of the indictment to which they pleaded guilty. They include one of the commissions paid because of one of the AVD refinancings, but not another one of the commissions. And then, finally, they miss a $60,000 commission. So because they left out those commissions, they got to this 223 figure. If you add them all in, and, you know, if the Court would like, I'm happy to file a one-page letter brief adding these numbers up for the Court and providing it there. But, you know, as we mentioned the numbers in our brief when we explained why the commission amounts were higher than the 223. I realize my time is up. I don't know if the Court has any ñ wants to address the Kimbrough 2B1.1 issue. Any further questions? No. Okay. Thank you. Thank you, Your Honor. You've saved about two minutes. Thank you. As it should be clear by now, the numbers in this case are not easy. In fact, even the probation office in the addendum to Mr. Tucker's pre-sentence report said these numbers are, you know, unclear. You really need to work through these numbers and figure out what the ultimate loss is. Now, with regard to this chart, the government argues that we mysteriously omitted some commissions. As I pointed out ñ I'm more interested, actually, in the government statement that you come in with this argument basically on the last day. Well, okay, I'll respond to that one first. I touched on this in my initial argument. That argument evolved. In fact, again, in the earlier filings, two earlier filings, Mr. Tucker pointed out that the government had not separated out principal and interest, countable from uncountable cost for the banks, and it challenged it to do so. And in the meantime, it assumed that some part of that would be part of the sentence calculations. After repeatedly asking them to do that, until this day they haven't explained why they haven't done it, I think that it was valid at that point for the defense to say, you don't get any of it. You can't ñ because you can't just guess at what's principal and what's interest. You haven't done the work to figure out what's principal and what's interest. You can't count any of it. So that's why it was done at the last minute, and it's because the government didn't do what it was supposed to do. Well, that kind of sounds like sneaky Pete playing in the weeds and coming in at the last dog-hound, huh? I understand why Your Honor might feel that way. I don't feel that way because, like I said, throughout the sentencing process, there were repeated challenges to do what it was supposed to do, follow the application note, and figure out what's principal and what's interest. And they didn't do it. And I think at that point it's valid to say that none of that can be counted. Counsel, what's your response to opposing counsel's representation that if we take the spreadsheet on S.C.R. 154 through 56, take commissions only, don't look at any of the entries that have interest included, and then take the concession that was made in S.C.R. 411 through 16, which is the loss to the victims only, that that supports a finding of $1 million? I'm glad you asked because that's the point that I wanted to address. I'll be equally glad if you answer it. I don't think that is a valid position. I will explain why. First of all, the government says that we mysteriously omitted these figures. If you look at the pre-sentence report. But let's not talk about the omitted figures. Let's talk about the figures that are actually there. But, Your Honor, I'm trying to explain why those figures are not reliable and should not be used by this Court in the first instance. They were submitted to the district court, though. And there was no indication that the judge, Judge Reel, did what this Court is complimenting doing, contemplating doing. And I think that there's – I don't have the case in sight with me, but I know there's case sites that say that if a court doesn't make a Rule 32 finding, the circuit court can't do it. It has to send it back down to the district court. No, we just have to see if there is enough evidence in the record to support the loss amount that was found by the district court. That's what I'm trying to do. Right. But what I'm saying, though, is I don't think even if the government's right that you can do that from its own chart, I don't think that's the beginning, all, and end all of that analysis. The – what we relied on for the commissions was the pre-sentence report. That's sealed executive record at 364. There's two commission numbers that add up to $223,100 – $223,121. And then that's – those figures were adopted by the government below. The sentencing report is right. We have no objection to that. So for them to say now that there's other figures in their chart, the very same chart that the PO used to come up with its numbers, say, oh, you didn't include those, then it's unfair on their part, having not pointed that out when they initially accepted those figures as proposed by the probation office. And it certainly reflects, at a minimum, how muddled this case is as to loss. I mean, even the probation office couldn't figure it out if the government was correct. And even the government, when it got the numbers back, didn't appreciate the probation office got it wrong. So that's the point I wanted to make. Thank you very much. Thank you. Thank both sides for your arguments. United States v. Tucker is now submitted for decision.
judges: Mills, Fletcher, Rawlinson